Cushing, J.
(of the First Appellate District, sitting in place of Washburn, J.). September 20, 1919, an application was made for dissolution of The Waldorf Amusement Company, a corporation organized under the laws of Ohio.
The charter of the corporation was issued by the state May 10, 1913. The purposes for which the corporation was formed were buying, selling, dealing in and handling theatrical supplies, merchandise and material, and for the purpose of engaging in the business of exhibiting motion pictures at such place or places in the state of Ohio as may be determined upon by the corporation.
*439 From its organization the corporation operated a motion picture theater at 47 South Main street, Akron, Ohio, under the name of The Waldorf Theater Company. In 1915, Charles A. Barbian and Robert L. Miller each purchased 47f shares of the common stock of the company. Miller transferred one share to his wife, Theresa Miller; Barbian transferred one share of stock to R. H. Nesbitt; and W. W. Dixon owned 4J shares.
Miller and Barbian were elected and qualified as directors September 1, 1915. On September 13, 1915, at a meeting of the board of directors, R. L. Miller was elected president; T. G. Miller, vice-president; and C. A. Barbian, secretary, treasurer and manager.
The regulations of the corporation provided that the annual meeting of the stockholders shall be held on the third Tuesday in June of each year. The record discloses that after September 13, 1915, there was no meeting of either the stockholders or directors called or held. Shortly after that date, the 4J shares of stock owned by Dixon were purchased by the corporation and held as treasury stock. After the purchase of this stock, the board had but four directors, two representing the Miller interests and two representing the Barbian interests. For about two years, beginning September, 1915, Miller and Barbian devoted all their time to the business of the corporation. Each had a drawing account of $25 per week. The corporation did not declare any dividends. The profits, which were considerable, were divided equally between Miller and Barbian from year to year. Some time in 1917 Miller dropped out of the management of the busi *440 ness and devoted his time to a business known as the theatrical supply business. Whether that business was a competitor of the corporation, under the provisions of its charter, “buying, selling, dealing in and handling theatrical supplies,” etc., was not argued and will not be here considered.
The effect of his act was to cast upon Barbian the entire management of the business of the corporation. He assumed the duties and continued as manager from the time Miller left the business until the receiver was appointed. Miller continued to receive $25 weekly and one-half of the net profits of the business.
The corporation did riot own any real estate. It operated its business in a leased building. The lease expired October 31, 1919. On August 14, 1919, the owners of the property notified the corporation that it would not renew the lease. The provision of the lease with reference to the renewal was:
“At the expiration of the term of this lease in case the first party, or their assigns, desire to further lease said property, said first party shall give said second party, or their assigns, the first opportunity to further lease said premises on such terms as the parties hereto may mutually agree upon.”
This provision did not give the corporation any right of renewal.
While it was within their power, the stockholders of the corporation have not elected a fifth director, as required by law, and either by wilful misuse or nonuse of their power have rendered the corporation nugatory.
The situation presented to the court of common pleas on the hearing of the case was that the corpo *441 ration was without a legal directorate, or a building in which to operate its business. It could not act to protect its property, interests or business. The refusal of the stockholders to agree on a fifth director left the corporation and its business at the mercy of the owners of the leased property. The corporation could be dispossessed at any time, and when in the street neither its property nor business would be of any value. The corporation had made and is making money. There are no creditors, nor third persons whose rights must be protected.
This action is brought under Section 11938, General Code. The owners of more than one-third of the capital stock seek to have the corporation dissolved.
The only other questions to be considered are:
First: Is it beneficial to the interests of the stockholders that the corporation be dissolved?
Second: Are the accomplishments of the purposes of the corporation impracticable ?
It was the intention of the legislature in enacting this statute to provide a method for protecting the stockholders by dissolution of the corporation, when it appears reasonably necessary for their ultimate best interests. This is especially true when the acts of the stockholders are such that the corporation cannot function and it is certain that a continuance of the corporation will cause a loss of its business and a sacrifice of the property of the corporation.
Miller’s conduct in deserting the business, engaging in a business that the corporation was authorized to carry on, and his attitude toward the corporation, as gathered from his testimony and the record, impress us that it must have been his hiten *442 tion to cause the corporation and the other stockholders trouble and loss. He. knew that the business of the corporation could not be carried on without a house in which to operate and that the corporation could not act without his cooperation, and, notwithstanding the argument of counsel that the lease contained a privilege of renewal, its provision, above quoted, did not give the corporation the right to renew.
The impression gathered from the record and the trial of the case is that Miller was not working for the interests of the corporation, or its stockholders.
The statutory proceedings with reference to an inventory, a statement of the capital stock, giving the names of the stockholders, number of shares, amount paid in, the statement of the encumbrances of the property of the corporation, the appointment of a referee or master, the hearing provided by the statute, the referee’s report to the court, together with his findings, the appointment of the receiver, and in fact all the requirements of the statute have been complied with.
“Internal dissensions between the stockholders which are of that grave and serious character which naturally interfere with or retard its management in the legitimate prosecution of its business or the reasonable discharge of its duties to the public, necessarily affect the interests of all the stockholders of the corporation to their prejudice, which would warrant the court under the statute to dissolve the corporation.” In re Mansfield Ry., Light & Power Co., 3 Ohio App., 253, 295.
*443 While no rule can be stated by which to determine what will constitute a sufficient cause for the dissolution of a corporation under the statute, it may be said that the condition of the corporation, and the possibility or impossibility of its being carried on with equal justice to all the stockholders, will largely determine the nature of the decree.
The acts and conduct of the stockholders in this case are of such a grave character as to warrant an order dissolving the corporation.
. The judgment of the court of common pleas will therefore be affirmed.

Judgment affirmed.

Dunlap and Vickery, JJ., concur.